# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **LEVI GARY SPRINGER,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:12cv00074 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **RANDAL MATHENA, et al.,** | ) | By: PAMELA MEADE SARGENT |
| Defendants. | ) | United States Magistrate Judge |

The pro se plaintiff, Levi Gary Springer, is an inmate at Red Onion State Prison, ("ROSP"). This case is before the court on the parties' motions for summary judgment, (Docket Item Nos. 44, 58). None of the parties have requested a hearing. The motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned now submits the following report and recommended disposition.

## I. Facts

Springer brings this civil rights action against several correctional officers, prison workers and ROSP Warden Randal Mathena. Springer seeks damages and unspecified injunctive relief under 42 U.S.C. § 1983 for interference with his access to the courts and cruel and unusual punishment.[1] Springer's claim for interference with his access to the courts is based on allegations that he has been given limited access to necessary legal resources, that he has been denied access to a notary public and that his legal mail has been tampered with or not delivered.

---

[1] Springer's claims are contained in his Complaint and in several motions to amend that the court has granted.

Case 7:12-cv-00074-SGW-PMS  Document 74  Filed 10/01/12  Page 1 of 17  Pageid#: 372

Springer's claim for cruel and unusual punishment is based on his allegations that correctional officers have placed something in his food which has caused him to suffer allergic reactions, that correctional officers have caused other inmates to place feces and urine in ventilation vents accessing his cell and that defendants have been deliberately indifferent to his medical needs in that medical staff members have refused his requests for additional tests to determine the cause of his allergic reactions.

In his Complaint, Springer alleges that certain notices from the Wise County Circuit Court seeking additional information from him regarding litigation he has in that court were not delivered by the ROSP mailroom. Springer, in his Complaint, admits, however, that the Wise County Circuit Court allowed him to respond once he notified the court that he had not received the notice. Springer further alleges that an inability to get requested legal materials in a timely manner from the ROSP law library forced him to seek an extension of time to file his petition for writ of certiorari to the United States Supreme Court. He admits, however, that the Court granted him an extension of time. Springer also alleged in his Complaint that Sgt. Collins refused to notarize a legal document on December 8, 2011. Springer did not allege that Collins's refusal resulted in a missed court deadline or the court's refusal to accept the document. Springer also alleges that on February 7, 2012, he was denied copies of certain documents needed to comply with a Supreme Court deadline. Springer does not allege whether he missed this Court deadline and whether it had any effect on his case pending before the Court. Springer also alleges in his Complaint that delays in receiving his legal mail from the Fourth Circuit Court of Appeals and a denial of access to needed legal materials for four weeks resulted in him missing a court deadline resulting in dismissal of his petition for rehearing on his habeas case in that court.

Springer repeated many of these allegations in his Amended Complaint filed on March 12, 2012. (Docket Item No. 9.)   This Amended Complaint does not contain any additional allegation of additional missed deadlines or dismissals of claims.  In a motion to amend filed April 30, 2012, (Docket Item No. 20), Springer alleged problems with delivery of mail from a Maryland state court.   Again, Springer does not allege that the delay in delivery prevented him from meeting any deadlines or resulted in dismissal. By motion to amend filed June 20, 2012, (Docket Item No. 41), Springer alleged that certain documents he mailed to the Supreme Court were never received.  He stated, however, that the Court gave him 60 additional days to resubmit the filings.  In a filing as recent as September 26, 2012, (Docket Item No. 71), Springer admitted that his petition for writ of certiorari is pending before the Supreme Court. By motion to amend filed August 1, 2012, (Docket Item No. 59), Springer alleged that a filing with the Supreme Court was refused as being untimely filed.   Springer stated that this occurred because his legal mail had been tampered with and an affidavit removed before being forwarded to the Court. He did not state, however, what, if any, effect this had on any pending litigation.

In his Complaint, it appears that Springer complained of "dysfunctional practices" in the mailroom which interfered with delivery of his legal mail. The Complaint also alleged that Springer simply did not receive legal materials and that Sgt. Collins purposely refused to notarize Springer's legal documents. In his Amended Complaint, however, Springer alleged that defendant Pease "refused" to process Springer's legal mail, and defendants Sykes and Edney refused his requests for legal materials. Through further amendments, Springer has alleged that Pease and Stanley, on occasion, have purposely tampered with his legal mail by opening it and removing pages or refusing to deliver it.

In his Amended Complaint, Springer also alleges that Sgt. Collins "purposely and sadistically" instigated other inmates to place urine and feces in the ventilation vents to inflict cruel and unusual punishment upon Springer. Springer's claim for cruel and unusual punishment also is based on his allegations that Collins placed something in his food which caused him to suffer allergic reactions and that Collins and Mathena have been deliberately indifferent to his medical needs in that medical staff members have refused his requests for additional tests to determine the cause of his allergic reactions.

In support of their motion for summary judgment, the defendants have filed the affidavit of R. Mullins, an Institutional Grievance Coordinator at ROSP. (Docket Item No. 45, Att. No. 1.) According to Mullins, the Virginia Department of Corrections has established a grievance procedure which is available to all of its inmates to resolve inmate complaints. Inmates are informed of the procedure when they come into a VDOC facility. This procedure is found in Operating Procedure, ("OP"), 866.1, entitled "Offender Grievance Procedure." A copy of OP 866.1 is attached to Mullins's affidavit. Under this procedure, grievances are to be submitted within 30 calendars days from the date of the incident. Prior to submitting a regular grievance, the inmate must demonstrate that he has made a good faith effort to informally resolve his complaint. This may be accomplished by submitting an informal complaint form to the appropriate department head.

Under the procedure, prison staff should respond to an inmate's informal complaint within 15 calendar days. When filing a formal grievance, an inmate must attach documentation showing that he first attempted to resolve the issue informally. Only one issue may be addressed per grievance form.

There are three levels of review available for regular grievances. Level I reviews are conducted by the warden or superintendent of the facility. A response at Level I must be made within 30 days. Level II responses are provided by the Regional Administrator, Health Services Director or Chief of Operations for Offender Management Services and must be made within 20 days. For most issues, Level II is the final level of review. For issues appealable to Level III, the Deputy Director or Director of the VDOC conducts the review. A response to a Level III appeal must be made in 20 days. The procedure states that expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal to the next level of review.

An inmate may file an emergency grievance if he believes that there is a situation or condition that subjects him to an immediate risk of serious personal injury or irreparable harm. Emergency grievance forms are available on a 24-hour basis regardless of housing status. An emergency grievance should be responded to within eight hours. The filing of an emergency grievance does not satisfy the exhaustion requirement, and the inmate still must file an informal complaint and regular grievance to exhaust his administrative remedies regarding an issue.

Under the procedure, any grievance that does not meet the filing requirements of OP 866.1 is returned to the inmate within two working days from the date of receipt with the reason for the return noted on the intake section of the grievance form. An intake decision may be reviewed by sending the grievance to the Regional Ombudsman for a review.

OP 866.1 also provides that a Facility Unit Head may restrict an inmate who abuses the grievance procedure to filing no less than one informal complaint and

one grievance per week. This restriction may last for up to 90 days. OP 866.1 provides that any informal complaint, regular or emergency grievance submitted by the inmate in excess of the limitation will be returned to the inmate without a response.

According to Mullins, Springer has not filed any regular grievance regarding feces or urine in the vent since 2010. On February 17, 2012, Springer filed an Emergency Grievance stating that the vents needed to be cleaned because they smelled of feces. (Docket Item No. 45, Att. No. 1 at 18.) The Emergency Grievance form was returned to Springer stating that his grievance did not meet the definition for an emergency. On April 22, 2012, Springer filed an Emergency Grievance stating that another inmate was placing water or feces in the vent. (Docket Item No. 45, Att. No. 1 at 20.) The Emergency Grievance form was returned to Springer stating that his grievance did not meet the definition for an emergency. Mullins stated that, based on her review of Springer's grievance file, Springer did not file any informal complaints or regular grievances complaining of urine or feces being placed in the vents.

In his March 12, 2012, Amended Complaint, (Docket Item No. 9), Springer states that, when he requested a complaint form to raise the issue of urine and feces being placed in the vent, Sgt. Collins refused to give him a form. Springer also has produced a February 13, 2012, Inmate Grievance Procedure Grievance Limitation Notification from Warden Mathena which states that from February 13 to May 12, 2012, Mathena had limited Springer to filing one Regular Grievance per week. (Docket Item No. 18 at 7.)

## II. Analysis

The defendants have moved for entry of summary judgment[2] in their favor on the following grounds:

1. Springer has failed to exhaust his administrative remedies as to his claim based on inmates placing feces and urine in his vent;

2. Springer has failed to state a claim upon which relief may be granted based on violation of his right of access to the courts in that he has failed to allege any injury;

3. Springer has failed to state a claim upon which monetary relief may be granted under § 1983 against the defendants in their official capacities; and

4. The defendants are entitled to qualified immunity.

Springer has moved for entry of summary judgment in his favor based on the defendants' failure to provide him with a brief Springer claims was filed with the court at the time the defendants filed their motion for summary judgment.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."

---

[2] The defendants have submitted no affidavits or other evidence on issues 2-4 below. Instead, they argue that Springer has failed to state a claim upon which relief may be granted. Because the court has received sworn pleadings with evidence attached from Springer, and because the defendants raise these issues in a motion for summary judgment, the court will treat them as motions for summary judgment. *See* Fed. R. Civ. P. 12(d).

Case 7:12-cv-00074-SGW-PMS   Document 74   Filed 10/01/12   Page 7 of 17   Pageid#: 378

FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

I will first address Springer's motion for summary judgment. It is clear from Springer's motion that he has misinterpreted the court's docket entry to state that the defendants filed both a brief and a memorandum in support of their motion for summary judgment. The court's docket entry states "Brief/Memorandum in Support re … Motion for Summary Judgment," (Docket Item No. 45). Attached to that docket entry is only the Memorandum In Support Of Defendants' Motion For Summary Judgment. No separate brief was attached to this docket entry. Therefore, the defendants have not refused to provide Springer with a copy of this brief. Furthermore, Springer admits that he was provided a copy of the memorandum. Based on this, I will recommend that the court deny Springer's motion for summary judgment.

Springer also asks that the court not consider any affidavits provided by the defendants more than 90 days after the defendants were ordered to file responsive pleadings. The only affidavit filed on behalf of the defendants is the affidavit of R. Mullins attached to the defendants' motion for summary judgment. The motion for summary judgment and the attached affidavit were filed with the court within the time period set by the court's May 25, 2012, Order. (Docket Item No. 26.) Therefore, the affidavit was filed timely and will be considered on the defendants' motion for summary judgment.

The defendants argue that summary judgment should be entered on one of Springer's claims because he failed to exhaust his administrative remedies as to this claim. In particular, the defendants claim that Springer failed to exhaust his administrative remedies as to his claim for cruel and unusual punishment based on inmates placing urine and feces in his cell's ventilation vent. Through the affidavit of Mullins, the defendants have produced evidence that Springer never filed a Regular Grievance regarding this issue. Springer, on the other hand, asserts that, when he requested a Regular Grievance form to file regarding this issue, Sgt. Collins refused to give him the form. Springer also has produced evidence that, during the applicable period of time, the warden of ROSP had limited him to filing one Regular Grievance form per week.

The Prison Litigation Reform Act of 1996, ("PLRA"), requires a prisoner to exhaust administrative remedies. "No action shall be brought with respect to prison conditions under section 1983 of this title … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) (West 2012). The exhaustion requirement is mandatory and applies to all inmate suits about prison life. *See*

*Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules…." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

Administrative remedies are "available" only if they are "accessible," "within one's reach," or "at one's disposal." *Johnson v. True*, 125 F. Supp. 2d 186, 189 (W.D. Va. 2000) (quoting *Langford v. Couch*, 50 F. Supp. 2d 544, 547 (E.D. Va. 1999)). "…[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process…, the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Furthermore, a prisoner lacks an available administrative remedy for exhaustion purposes if the prisoner was unable to file a grievance because prison officials refused to provide him with the necessary grievance form. *See Mitchell v. Horn*, 318 F.3d 523, 529 (3rd Cir. 2003); *see also Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) ("a remedy that prison officials prevent a prisoner from 'utiliz[ing]' is not an 'available' remedy under § 1997e(a)…").

Inasmuch as Springer's evidence raises a genuine issue of material fact as to whether the grievance procedure was available to him regarding his complaints of feces and urine in the vents, the entry of summary judgment in the defendants' favor on this issue is inappropriate.

The defendants also assert that Springer has failed to state a claim upon which relief may be granted for denial of access to the courts, in that he has failed

to allege any injury suffered. As stated above, Springer's claim for interference with his access to the courts is based on allegations that he has been given limited access to necessary legal resources, that he has been denied access to a notary public and that his legal mail has been tampered with or not delivered.

Prisoners have a fundamental right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977). Prisoners have a constitutional right to access the courts, and denial of access to the prison law library may violate due process insofar as it impedes meaningful access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). To prove that a prisoner has been denied this right, a prisoner must show that he has suffered an "actual injury" because of the restrictions imposed upon him. *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir. 1993). The requirement of an "actual injury" means the deprivation of legal materials "actually prevented [plaintiff] from meeting deadlines, or otherwise prejudiced him in any pending litigation, or actually impeded his access to the courts." *Oswald v. Graves,* 819 F. Supp. 680, 683 (E.D. Mich. 1993).

Despite all Springer's evidence of interference with his legal mail going to and from various courts and his inability to receive legal materials as needed, the only actual injury Springer has demonstrated is that he missed a court deadline resulting in dismissal of his petition for rehearing on his habeas case in the Fourth Circuit. Therefore, I will recommend that the court enter summary judgment in the defendants' favor on all of Springer's claims regarding denial of access to the courts except his claim based on the dismissal of his petition for rehearing on his habeas case in the Fourth Circuit.

The defendants also seek summary judgment in their favor on Springer's claims based on qualified immunity. Qualified immunity "shields government officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Trulock v. Freeh*, 275 F.3d 391, 399 (4th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Short v. Smoot*, 436 F.3d 422, 426 (4th Cir. 2006) ("Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"). Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

A claim of qualified immunity is evaluated using a three-step analysis. First, the court must determine "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[3] Second, the court must "inquire whether at the time of the alleged violation [the right] was clearly established." *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips J., concurring). Third, the court must determine whether a "reasonable person in the official's position would have known that his conduct would violate that right." *Collinson*, 895 F.2d at 998 (Phillips J., concurring).

Springer's claim for interference with his access to the courts is based on allegations that he has been given limited access to necessary legal resources, that

---

[3] In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that the sequential inquiry of *Saucier* is often appropriate, but not mandatory. Instead, the Court held that the judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *See Pearson*, 555 U.S. at 236.

Case 7:12-cv-00074-SGW-PMS   Document 74   Filed 10/01/12   Page 12 of 17   Pageid#: 383

he has been denied access to a notary public and that his legal mail has been tampered with or not delivered. A prisoner's right to "adequate, effective, and meaningful" access to the courts was "established beyond doubt" approximately 35 years ago. *See Bounds*, 430 U.S. at 821-22. Furthermore, the Supreme Court interpreted this right to include access to legal resources, access to a notary public and unfettered access to mail to and from the courts. S*ee Bounds*, 430 U.S. at 824-28. As stated above, Springer has provided sworn pleadings stating that Collins purposely refused to notarize his legal documents, that Pease refused to process his legal mail, that Sykes and Edney refused his request for legal materials and that Pease and Stanley opened and tampered with his legal mail. If these allegations are true, the defendants should have known that such actions violated Springer's constitutional right of access to the court. The defendants have not filed any affidavits or other evidence contesting Springer's sworn statements. Therefore, the entry of summary judgment in the defendants' favor on Springer's denial of access to the courts claim based on qualified immunity is not appropriate.

The defendants also argue that summary judgment should be entered in their favor on Springer's cruel and unusual punishment claims based on qualified immunity. The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment." U.S. CONST. amend. VIII. This amendment not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Again, if Springer's allegations against Collins are true, Collins has deliberately attempted to sicken or injure Springer. Such actions clearly would violate Springer's right to be free from cruel and unusual punishment, and Collins should have known that such actions violated Springer's rights. Springer's allegations are all contained in sworn pleadings. Collins has not filed any affidavit

Case 7:12-cv-00074-SGW-PMS Document 74 Filed 10/01/12 Page 13 of 17 Pageid#: 384

or other evidence contesting Springer's allegations. Therefore, the entry of summary judgment in Collins's favor is not appropriate on Springer's cruel and unusual punishment claims based on placing feces and urine in the air vent and placing something in his food.

Entry of summary judgment in the defendants' favor is appropriate, however, on Springer's claim of cruel and unusual punishment for deliberate indifference to his medical needs. To amount to deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Furthermore, to bring a medical treatment claim against nonmedical personnel, an inmate must show that such officers were personally involved in a denial of treatment, deliberately interfered with prison doctors' treatment or tacitly authorized or were indifferent to the prison physicians' misconduct. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (overruled on other grounds). There are no facts before the court to suggest this.  In fact, Springer, through his sworn pleadings, has admitted that he was provided with medical care, but the physician, who is not sued, simply refused to perform additional testing.  These facts do not prove a claim for deliberate indifference to serious medical needs.  Therefore, entry of summary judgment in the defendants' favor on this claim is appropriate.

The defendants also are correct that an official acting in his official capacity is not a "person" for purposes of section 1983.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).  Therefore, insofar as Springer seeks damages under section 1983 against the defendants in their official capacities, summary judgment should be entered in the defendants' favor.

# PROPOSED FINDINGS OF FACTS AND
# CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.  Springer has failed to demonstrate that summary judgment in his favor is appropriate;

2.  The evidence presents a genuine issue of material fact as to whether the grievance procedure was available to Springer to address his complaints of inmates placing feces and urine in the vents;

3.  The defendants have failed to demonstrate that summary judgment in their favor is appropriate based on Springer's failure to exhaust his administrative remedies;

4.  Springer has alleged and provided evidence of actual injury based on denial of his access to the courts in that he has provided evidence that his inability to receive legal materials and the failure to deliver his legal mail resulted in his failure to meet a court deadline which resulted in the dismissal of his petition for rehearing on his habeas case in the Fourth Circuit;

5.  Springer has failed to allege or provide evidence of any other actual injury suffered as a result of a denial of access to the courts;

6.  Entry of summary judgment in the defendants' favor is appropriate on all of Springer's claims of denial of access to the courts other than his claim based on the dismissal of his petition for rehearing on his habeas case in the Fourth Circuit;

7.     The defendants have failed to demonstrate that summary judgment in their favor is appropriate based on qualified immunity on Springer's claims based on denial of access to the courts;

8.     Defendant Collins has failed to demonstrate that summary judgment in his favor is appropriate based on qualified immunity on Springer's claims based on placing feces and urine in the vent and placing something in his food;

9.     Entry of summary judgment in the defendants' favor is appropriate on Springer's claims of cruel and unusual punishment based on deliberate indifference to his medical needs; and

10.    Insofar as Springer seeks damages under section 1983 against the defendants in their official capacities, summary judgment should be entered in the defendants' favor.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny Springer's motion for summary judgment and grant in part and deny in part the defendants' motion for summary judgment.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed

finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Samuel G. Wilson, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: This 1st day of October, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE